|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| EASTERN DISTRICT OF WASHINGTON | |

UNICORN INVESTMENT BANK, B.S.C.(c), a foreign corporation, and THE UNICORN GROUP, a foreign corporation,

    Plaintiffs,

  v.

MATHEWS KURUVILLA, an individual, and MK CAPITAL, LLC, a North Carolina limited liability company,

    Defendants.

No. CV-04-3135-FVS

ORDER

**THIS MATTER** comes before the Court based upon the defendants' motion to dismiss.  They are represented by Michael Vaska and Ramsey Ramerman.  The plaintiffs are represented by Randall P. Beighle and Laura T. Morse.

    **BACKGROUND**

"The Unicorn Group" is a Cayman Islands company.  During the Fall of 2003, The Uniform Group hired Matthews Kuruvilla as a financial consultant.  Mr. Kuruvilla is a resident of the State of North Carolina and is the managing member of MK Capital, LLC, a North Carolina limited liability company.  After retaining Mr. Kuruvilla, The Unicorn Group formed Unicorn Investment Bank, B.S.C.(c).  The latter is an investment bank that is organized and chartered under the laws of the Kingdom of Bahrain.  Once Unicorn Investment Bank began operating, it hired Mr. Kuruvilla as its Deputy Manager of

ORDER - 1

Corporate Finance.  His principal responsibility was to negotiate investment projects for the bank.

    Wilkinson Corporation is a Washington corporation that is located in Yakima.  Wilkinson raises money for real estate investments and then manages the properties for the investors.  During roughly the same period that The Unicorn Group was looking for a financial consultant, Wilkinson also was looking for a financial consultant.  Wilkinson contacted Mr. Kuruvilla and explained its interest in obtaining someone to seek investors in Europe and the Middle East.  Despite having agreed to work for The Unicorn Group, Mr. Kuruvilla agreed to work for Wilkinson.  Mr. Kuruvilla did not disclose to Wilkinson his relationship with The Unicorn Group and Unicorn Investment Bank, nor did he disclose to them his relationship with Wilkinson.  Instead, he subsequently arranged for Wilkinson and Unicorn Investment Bank to enter into a joint real estate venture.  As Wilkinson and Unicorn Investment Bank prepared to close the transaction, they learned of Mr. Kuruvilla's alleged duplicity.  Each organization terminated its relationship with Mr. Kuruvilla.  However, they decided to proceed with the joint venture.  As a result, Wilkinson may be required to pay Mr. Kuruvilla a fee of one million dollars.  At Unicorn Investment Bank's request, Wilkinson placed his potential fee in escrow in a Washington bank.

    On December 8, 2004, Unicorn Investment Bank and The Unicorn Group filed the instant action.  They seek a declaratory judgment providing that Mr. Kuruvilla is not entitled to the money Wilkinson placed in escrow, and that, as between Mr. Kuruvilla and the Unicorn Investment Bank, the fee belongs to the bank not to him.  The defendants move to dismiss on the ground they are not subject to personal jurisdiction in the State of Washington.  Fed.R.Civ.P.

ORDER - 2

12(b)(2).

**APPLICABLE LAW**

State law governs whether the defendants are subject to personal jurisdiction in the State of Washington. *See Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir.1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).  Federal law governs whether exercising personal jurisdiction would violate the defendants' right to due process.  *Id.*  *See also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1075, at 411-12 (3d ed.2002) (" Federal law always is controlling to determine whether the constitutional principles of due process . . . have been satisfied.").

**GENERAL JURISDICTION**

A nonresident corporation is subject to general jurisdiction in the State of Washington if it was doing business in this state at the time the cause of action accrued.  RCW 4.28.080(10).[1]  *Im Ex Trading Co. v. Raad*, 92 Wn. App. 529, 537, 963 P.2d 952 (1998), *review denied*, 137 Wn.2d 1023, 980 P.2d 1280 (1999).  A corporation is doing business in this state when its activities in Washington are "substantial and continuous."  *Raymond v. Robinson*, 104 Wn. App. 627, 633, 15 P.3d 697 (2001).  This test is consistent with the requirements of due process.  *Cf. Easter v. American West Financial*, 381 F.3d 948, 960 (9th Cir.2004) ("A defendant is subject to general

---

[1] RCW 4.28.080(10) provides that, in the case of suit against "a foreign corporation or nonresident joint stock company, partnership or association doing business within this state," the summons may be served upon "any agent, cashier or secretary thereof."  Washington appellate courts have held that this statute creates general jurisdiction.  *See, e.g., Hein v. Taco Bell, Inc.*, 60 Wash. App. 325, 328-29, 803 P.2d 329 (1991) (citation omitted).

ORDER - 3

jurisdiction only where the defendant's contacts with a forum are substantial or continuous and systematic."); *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) ("A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984))).  Indeed, Washington courts apply the "doing business" test in order to make certain that due process concerns are addressed before a nonresident defendant is subjected to general jurisdiction in Washington.  *Im Ex Trading Co.*, 92 Wn. App. at 537.  Since "the 'doing business' and due process inquiries are the same," *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 (9th Cir.1993) (citations omitted), the "statutory and constitutional standards merge into a single due process test."  *Id.* (internal punctuation and citations omitted).

   The plaintiffs rely upon Mr. Kuruvilla's employment by Wilkinson to establish the existence of substantial contacts with the State of Washington.  As the plaintiffs point out, he was employed by Wilkinson for approximately one year.  During that period, say the plaintiffs, Mr. Kuruvilla communicated regularly with colleagues in Washington and traveled to this state on at least one occasion.  According to the plaintiffs, the continuous and systematic nature of Mr. Kuruvilla's contacts with Washington can be measured, in part, by the fact he has been paid $125,000 by Wilkinson and by the fact he's claiming the money Wilkinson placed in escrow.

   "The standard for establishing general jurisdiction is 'fairly high,' . . . and requires that the defendant's contacts be of the

ORDER - 4

sort that approximate physical presence." *Bancroft & Masters, Inc.*, 223 F.3d at 1086 (citations omitted).  While the circumstances cited by the plaintiffs (a lucrative employment contract, regular communication, at least one trip to Washington, and receipt of wages) indicate that Mr. Kuruvilla's contacts with this state were not insignificant, these circumstances cannot be said to approximate physical presence.  This conclusion is reinforced by the countervailing circumstances cited by Mr. Kuruvilla.  As he points out (and the plaintiffs concede), he is not domiciled in Washington.  He has never owned a home or rented an apartment in this state.  He does not have a representative here.  Furthermore, the only Washington employer for whom he has worked is Wilkinson, and Wilkinson hired him to find investors in Europe and the Middle East.

**SPECIFIC JURISDICTION**

Specific jurisdiction is created by RCW 4.28.185, which is Washington's long-arm statute.  *Raymond*, 104 Wn. App. at 636-37.  The plaintiffs are relying upon subsections (1)(a) and (1)(b) of RCW 4.28.185.  Both sides agree that in Washington, specific jurisdiction extends to the limit imposed by the due process clause.  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir.1995).  The requirements of due process are satisfied "where (1) the non-resident defendant has purposefully directed his activities or consummated some transaction with the forum or a resident thereof, or performed some act by which he purposefully availed himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable."  *Bancroft & Masters, Inc.*, 223 F.3d at 1086.

**PURPOSEFUL AVAILMENT**

The first prong of the test for specific jurisdiction is sometimes referred to as the purposeful-availment prong. In the Ninth Circuit, the term "purposeful availment" includes two distinct concepts: "purposeful availment" and "purposeful direction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004). The term "purposeful availment" is associated with contract claims. The term "purposeful direction" is associated with tort claims. *Id.*

Insofar as contract claims are concerned, the issue typically is whether the defendant's contacts with the forum are such that the defendant *himself* has created a substantial connection with it. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original). This may occur where, for example, "the defendant 'deliberately' has engaged in significant activities within a State," *id.* at 475-76, 105 S.Ct. at 2184 (citation omitted), or the defendant "has created continuing obligations between himself and residents of the forum[.]" *Id.* at 476 (internal punctuation and citation omitted). *See also Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir.1990) (quoting *Burger King*, 471 U.S. at 475-76, 105 S.Ct. at 2184).

Insofar as tort claims are concerned, the issue typically is whether the defendant performed some act in a foreign state that he both aimed at the forum and knew would have an adverse effect in the forum upon the plaintiff. *Bancroft & Masters, Inc.*, 223 F.3d at 1087. The Ninth Circuit "evaluates purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)." *Schwarzenegger*, 374 F.3d at 803. "[Under] *Calder*, the

'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### A. Availment

The plaintiffs cite a number of circumstances that are relevant to the issue of availment. To begin with, Wilkinson hired Mr. Kuruvilla to locate potential investors and paid him generously for his efforts. As a Wilkinson employee, Mr. Kuruvilla communicated regularly with his colleagues in Washington, traveling to this state on one occasion to negotiate a modification of his contract. Finally, he is seeking to recover the money placed in escrow by Wilkinson at the plaintiffs' request.

"[A] non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Here, there is no evidence Mr. Kuruvilla solicited employment by Wilkinson; rather, it appears Wilkinson initiated contact with him. *Cf. Roth v. Garcia Marquez*, 942 F.2d 617, 621-22 (9th Cir.1991) ("There are two facts . . . that marginally work in [the defendants'] favor: their minimal physical presence in the forum and the fact that it was [the plaintiff] who made the sedulous efforts of solicitation."). As the plaintiffs point out, Mr. Kuruvilla eventually agreed to work for Wilkinson -- but by itself, the fact they executed an employment agreement does not constitute availment. Additional analysis is required. The

Court must consider "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]'" *Gray*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185).  In *Roth*, for example, the Ninth Circuit upheld the exercise of personal jurisdiction.  "This is not," said the circuit court, "an instance where the contract was a one-shot deal that was merely negotiated and signed by one party in the forum; on the contrary, most of the future of the contract would have centered on the forum."  942 F.2d at 622.  *Roth* is readily distinguishable.  As the plaintiffs acknowledge, Wilkinson hired Mr. Kuruvilla to find investors in Europe and the Middle East, not in the State of Washington.  *See FDIC v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1443 (9th Cir.1987) ("The subject of the contract was in Fiji, the governing law was Fiji's, and the defendant's only significant performance in California was picking up a check for an already completed and executed contract.").  Mr. Kuruvilla may have been well paid for his services.  However, "the receipt of payment alone for services rendered outside the forum state is not sufficient to support personal jurisdiction."  *Id.* (citing *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1329 (9th Cir.1985)).  Nor can much significance be attached either to Mr. Kuruvilla's single trip to this forum, *see Sher v. Johnson*, 911 F.2d 1357, 1363 (9th Cir.1990) ("[t]he three trips to California were discrete events arising out of a case centered entirely in Florida"), or to Mr. Kuruvilla's business communications with his colleagues.  *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985) ("ordinarily[, the] use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'"

ORDER - 8

(quoting *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1254 (9th Cir.1980))).[2]

B. Direction

The plaintiffs allege Mr. Kuruvilla owed them a duty of loyalty based upon his agreement to solicit investors for them. They further allege he breached this duty by working for Wilkinson in essentially the same capacity and failing to disclose the apparent conflict of interest. According to the plaintiffs, Mr. Kuruvilla's trip to Washington and each of his communications with his colleagues in this state contributed to the breach and, thus, should be treated as a part of a tortious scheme. Since, in the plaintiffs' opinion, Mr. Kuruvilla's tortious scheme involved acts that occurred in this forum, they say he committed a tort within this state for purposes of RCW 4.28.185(1)(b).

Clearly, this is not a typical purposeful direction case. The plaintiffs are not residents of Washington. Nor are they arguing Mr. Kuruvilla performed an act in a foreign state that he both aimed at this forum and knew would injure them here. To the contrary, they are arguing he committed tortious acts in Washington that he knew would injure them outside this state. This argument poses an interesting question: Is a person who is not a resident of this state subject to personal jurisdiction in this state if he allegedly commits a tort in this state that injures another nonresident in a foreign state? To date, the plaintiffs have not provided a

---

[2] A circumstance that arguably might alter this determination is the presence in this state of the funds Wilkinson placed in escrow. However, the plaintiffs are not attempting to assert jurisdiction under RCW 4.28.185(1)(c) or any other equivalent statute, and Mr. Kuruvilla is not relying upon a court in this forum to obtain the disputed funds.

ORDER - 9

satisfactory answer to this question.

**CONCLUSION**

As the record now stands, the plaintiffs have failed to satisfy the first prong of the specific-jurisdiction test. Since the three prongs of this test are conjunctive, *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir.1993), it is unnecessary to address the two remaining prongs of the test. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 817 (9th Cir.1988).

**IT IS HEREBY ORDERED:**

1. The plaintiffs' motion to expedite (**Ct. Rec. 20**) is denied.

2. The defendants' motion to dismiss (**Ct. Rec. 11**) is granted.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order and furnish copies to counsel.

**DATED** this   16th   day of May, 2005.

                    s/ Fred Van Sickle
                    Fred Van Sickle
            Chief United States District Judge